THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
****

FILED IN CLERKS OFFICE
2017 NOV 21 PM 4: 54
U.S. DISTRICT COURT
DISTRICT OF MASS.

Players1st Sports Management Group-SMG )
a.k.a. James Dickey, Esq. certified agent ) Case No:

) COMPLAINT & INJUNCTION
/ Plaintiffs, )
)
vs. ) (Antitrust / Contract)
)
National Football League, NFLMC, and )
National Football League Players Association,
)
/ Defendants )
_______________________________ )

********************

COMPLAINT

The Plaintiffs, Players1st-SMG and James Dickey, files this complaint against the National Football League (NFL), National Football League Management Council (NFLMC), and the National Football League Players Association (NFLPA) to bring this civil action and claim of antitrust violations against the Defendants to obtain equitable relief, injunction(s) and damages for illegal and improper conduct alleging as follows:

NATURE OF THE ACTION

This action is brought pursuant to the Sherman Act under 15 U.S.C. sec. 1, and the Clayton Act, 15 U.S.C. sec 4-5, challenging the conduct of the Defendants to set up artificial barriers to the free competitions of agents to represent NFL athletes by making agreements for the exclusive participation of certified agents that has an unreasonable "three year" rule requirement for continual certification of agents who do not sign players to the active roster of a NFL team within 3 years, and the breach of contracts that are being carried out without a proper review process contrary to the good laws for free and fair competition in the economic [market ] system of the professional football. And to which antitrust exemptions and protections granted to the NFL and NFLPA pursuit to Collective Bargained Agreements "CBA" should not operate and apply without close scrutiny.

## PARTIES

1. The Plaintiff(s) is a resident and citizen of the United States, conducting his primary business as a sports agent and sports agency in Middlesex county, State of Massachusetts.

2. The Defendant, NFL Players Association "NFLPA" is the professional players association of the National Football League "NFL" organized formally as a Labor Union and acting under the protections and benefits of U.S antitrust laws, headquartered and doing primary business out of the District of Columbia, "Washington D.C";

3. The Defendant, NFL Management Council "NFLMC" is the professional management group of the NFL, headquarter and doing primary business in New York city, responsible for the overall management of the National Football League; and serving as an active agent for the "owners" of the NFL teams doing business in several contiguous states, including the state of Massachusetts.

4. The Defendant, the National Football League "NFL" is a professional football league organized and operating under the protections of U.S. antitrust laws, headquartered, and doing primary business out of the state of New York, New York City, and active in the several contiguous states, including the state of Massachusetts.

## JURISDICTION

5. This Court has jurisdiction, pursuant to 28 U.S.C. sec. 1332 as the Plaintiff and Defendants through their representatives are citizens and doing primary business out of different states and the amount in controversy exceeds $75k; and pursuant to the Sherman Antitrust Act, 15 U.S.C. sec. 1-4 and the Clayton Antitrust Act, 15 U.S.C. sec 4-6, regarding anti-trust violations and protections against unreasonable restraint to trade, competition and commerce. Venue is proper in this Court's eastern division, as the Plaintiff is a resident and conducting his primary sports business in Middlesex county in the State of Massachusetts; and at least one of the Defendants also conducts business.

## FACTS

6. In 2007- 2008, the Plaintiff applied and was certified by the NFLPA as a certified agent of the NFLPA and NFL pursuant to the guidelines as set forth by the Collective Bargaining Agreement (CBA) between the NFL and NFLPA.

7. Under the guidelines set forth therein, the Plaintiff was subjected to a three (3) year rule, which allowed for the decertification of all agents unable to negotiate a contract on behalf of a client to the active 53-man roster; and which upon notice of appeal no agent shall be decertified without a hearing and exhaustion of the appeal process.

8. The Plaintiff was unable to negotiate contracts for his clients to the 53-man active roster within the three (3) year time period due to the nature of the business, other extenuating circumstances, and family illness beyond the agent's control that delayed the active pursuit of big named clients usually set to make the NFL active rosters.

9. The Plaintiff, thereafter timely filed a notice of appeal to any decertification as would be sent to the NFL by the NFLPA, with notice to both the NFL and NFLPA due to extenuating circumstance; and was not granted an appeal hearing as the NFLPA and NFL engaged in negotiations for a new Collective Bargaining Agreement (CBA'11).

10. The NFLPA therein opted to decertify its status as the collective bargaining unit of the NFL players as a matter of convenience and legal strategy; and therein decertified the Plaintiff as a certified agent without a hearing while allowing the more established agents to remain certified under the new CBA without any additional examinations under the new rules and regulations of the 2011 CBA.

11. The Plaintiff was thereafter required to reapply and to be recertified under the new Collective Bargaining Agreement (CBA '2011) contrary to the guidelines as set forth under both the old and new CBA; and upon examination was re-certified as a certified agent of the NFLPA and NFL.

12. The Plaintiff, during the next three (3) year rule time period closely observed the disparity in treatment, promulgations and applications of rules and regulations between the more established agents of the NFLPA and NFL, and the new agents seeking to participate in the industry; and particularly as it relates to minority agents & firms.

13. The Plaintiff, therein noted the continual violations of the rules and regulations of the NFL and NFLPA by the more established agents as compared to new agents not affiliated with the established firms, wherein the application of the promulgated rules were often ignored and/or adjustments (tacitly) made to the enforcement of the Agents rules & regulations in a manner so as to benefit the well-established and leading agents in the NFL at the exclusion and detriment to newly arising agents not affiliated with any established firms;

14. The Plaintiff(s) noted that the NFLPA conducted secret meetings with the more established agents and firms to set forth the guidelines and applications of agents' rules and regulations at the exclusion of most minority agents;

15. The Plaintiff(s) therein observed and noted that the so-called three (3) year rule appeal process was merely set up as a ruse and sham to routinely deny any reasonable appeal to the decertification process, which became an automatic decertification event contrary to the guidelines as set forth under the CBA;

16. On September 30, 2016 the Plaintiff again appealed the three (3) year rule decertification process with notice to both the NFL and NFLPA; and notwithstanding said notice the

Plaintiff was again decertified from the agents list without a hearing and exhaustion of the appeal process.

17. The decertification process as carried out by the NFLPA and therefore the NFL appear systematically designed and applied prior to the NFL's trade deadlines to remove the upcoming new agents from the NFL's certified agents list before the last active time period of the season for negotiating contracts for potential players, likely to make the NFL's teams active rosters;

18. On October 1, 2016, the Plaintiff was automatically decertified as a Certified Agent by the NFLPA and therefore the NFL, without a hearing at the end of the first quarter of the NFL football season wherein most NFL teams are still making active adjustments to their active roster(s).

19. The Plaintiff was thereafter offered to schedule a hearing via a last-minute reference to the availability of the NFLPA's special arbitrator on November 22, 2016 in Washington, D.C. that was in conflict with Plaintiff's legal schedule and well after the decertification of the agent's status became mute.

20. The NFLPA and the NFL, acted in violation of its Collective Bargained Agreement and the spirit therein by allowing for the automatic decertification of an Agent before providing for any reasonable exhaustion of the appeals process by an truly independent arbitrator;

21. The NFLPA and the NFL, allows for several agents to act as one to circumvent the so-called three (3) year rule requirement by signing off on the same contract of a player making the active roster without any true involvement and/or representation in the active negotiations and endorsement of the players' contract to an active NFL roster.

22. The NFL and NFLPA serves as the leaders in the sports industry of football as followed by the players and administration of football at the colligate level and as set forth under the NCAA football & agent regulations; and should be held to a high and strict standard in regards to compliance with its own CBA guidelines and the stated laws of this country in a non-discriminatory manner.

23. The NFLPA and NFL engages in unnecessary discriminatory conduct to obstruct free and fair competition in the business and financial industry of the NFL; and as it relates to sports agents acting above-board in the recruitment of clients;

24. The NFLPA and NFL engages in unnecessary discriminatory conduct to obstruct free and fair competition in the business and financial industry of the NFL, particularly as it relates to minority agents and new participants attempting to provide unique qualified services to a large group of players, without any reasonable relations to the stated goals of the NFL and the Anti-trust protections as afforded by federal and state laws;

25. The NFLPA and NFL conducts the business of the NFL in continual violations of its collective bargaining agreements (CBA), which is often utilized as a matter of

convenience to give the appearance of good faith and arm length negotiations between the NFL, (NFLMC) and NFLPA on behalf of the players that richly inures to the sole benefit of the NFL "owners" relative to the NFL "players" and their independent agents involving a brutal sport leading to concussions and other substantial disabilities upon retirement.

26. The NFLPA and NFL utilizes the Collective Bargaining Agreement (CBA) to benefit from the protections of the Anti-trust laws in the financial and business industry of the NFL while engaging into unnecessary exclusive conduct that is inhibiting the free market system from operating in a more efficient manner to allow for minority agents and similar participants to have full, and fair access to participate lawfully in the business industry of the NFL;

27. The NFLPA and NFL continually goes in and out the Collective Bargaining Agreement as a matter of convenience, such that there are no clear guidelines for all the agents and athletes to follow across the board in the business of the NFL;

28. The NFLPA and NFL continually goes in and out the Collective Bargaining Agreement as a matter of convenience, such that there is a tacit understanding to control the business of the NFL's industry and allow for selective conduct to operate in a discriminatory manner throughout the NFL by the more established agents and/or individuals who are not certified agents so as to thwart competition in the industry and particularly as it relates to minority participants.

Pursuant to Nature of this Action

29. The Plaintiffs brings this action for civil damages and injunction arising out of the discriminatory conduct of the NFL and NFLPA to create artificial barriers to hamper and inhibit minority agents from competing fairly in the professional football industry, wherein the NFL and NFLPA benefits from the exclusive protections and exemptions of U.S. anti-trust laws while operating under guidelines created and/or applied in such an discriminatory manner as to result in breach of contract(s) and in the unreasonable restraint on commerce and competition in the professional football industry and economy; and specifically as it relates to minority agents.

FIRST CAUSE OF ACTION
(Breach of Contract & Fiduciary Duty)

30. The Plaintiffs reiterates the assertions of facts from above as fully stated herein, and further state and alleges that:

   a. The Defendants are acting in concert to violate its own CBA and other antitrust laws as exempted by the "Collective Bargaining Agreement", wherein there is at least an implied agreement and covenant of good faith between the NFL, NFLPA and the Certified Agents of the NFL to operate above board in a non-discriminatory manner

to promote fair and equal opportunities for all the participants in the businesses of the NFL;

b. The Defendants entered into an expressed and implied contract with the Plaintiff to become a part of the NFL professional business system by accepting fees offered and paid by the Plaintiff to be a part of the NFL system of agent's representations in the league, and active compliance with the CBA to carry out the rules and regulations of the NFL and NFLPA business uniformly to all participants in a non-discriminatory manner;

c. The Defendants owed a fiduciary duty to the Plaintiff by accepting his fees to be a part of the NFL system of representations in the league and loyal compliance with the CBA's rules and regulations, to monitor and uniformly enforce the rules and regulations of the NFL and NFLPA openly and equilaterally to all agents and participants in the business of the NFL;

d. The Defendants are violating the agreement and contract with the Plaintiff, expressed and/or implied, by acting in concert either actively, tacitly or by implied consent to violate the agreement to conduct the business of the NFL in a uniformly and non-discriminatory manner by allowing various agents, sports agency firms and individuals that are noncertified-agents to violate the guidelines, rules and regulations of the CBA and NFLPA entering into the business markets of the league without recourse;

e. The Defendants are acting in concert either actively, tacitly or by implied consent to circumvent the reasonable free and fair treatment of the new agent participants in the business of the NFL by allowing various established certified agents, sports agency firms and non-certified parties to violate the rules and regulations of the NFL and NFLPA by conducting the business of the NFL in an inconsistent and discriminatory manner showing favoritism to various participants.

f. The Defendants are acting in concert either actively, tacitly or by implied consent to violate the implied agreement and fiduciary duty to the Plaintiff to conduct the business of the NFL in a uniformly and non-discriminatory manner by allowing various agents and sports agency firms to violate the rules and regulations of the CBA and NFLPA regarding qualifications to become a certified agent of the NFL and maintaining said status by constantly relaxing and ignoring the rules as set forth under the guidelines for governing NFL contract advisors; all leading to more corrupt activities in the business of the NFL;

g. The Defendants are acting in concert either actively, secretly or by implied consent to violate the implied agreement to conduct the business of the NFL in a uniformly and non-discriminatory manner and honoring their fiduciary duty to the Plaintiff based upon trust of an open and fair system by allowing various agents and sports agency firms to violate the rules and regulations of the CBA and NFLPA; and in allowing

the offering of payments to collegiate athletes and their families prior to signing NFL contracts and making NFL teams active rosters without recourse.

h. The Defendants are acting in concert either actively, tacitly or by implied consent to violate the implied agreement to conduct the business of the NFL in a uniformly and non-discriminatory manner and honoring their fiduciary duty to the Plaintiff based upon trust of an open and fair market system by allowing many participants to violate the rules and regulations of the CBA and NFLPA in making pre-payments and providing other improper incentives to players to sign with certain established agents or agencies, thereby creating a substantial disparity and competitive disadvantage to new agents seeking entry into the market ;and without recourse upon discovery of the violations.

i. The Defendants are acting in concert either actively, secretly or by implied consent to violate the implied agreement to conduct the business of the NFL in a uniformly and non-discriminatory manner and honoring their fiduciary duty to the Plaintiff(s) by allowing for substantial disparities and artificial barriers to exist as to the new agent's business in the NFL by selectively enforcing some of its rules and regulations upon new players entering the league prior to signing NFL's contracts and making a NFL team's active roster.

j. The Defendants are allowing various Agents and Sports Agency Firms to violate the rules and regulations (including the spirit of the same) regarding compensations to clients and particularly the vulnerable college athletes of the NCAA by the selective enforcement of the rules and regulations governing contract advisors;

k. The Defendants have violated their agreement, expectations and fiduciary duty to the Plaintiff(s) to operate in good faith and honor the same rules and regulations as promulgated in the CBA and NFLPA Agent's Regulations by selectively enforcing a three (3) year rule regarding agent's certifications, that does not apply to each and every individual certified agent of the NFL and NFLPA uniformly; and as it allows for provisions specifically designed for dumping of many agents into an inclusionary bucket for the sole benefit of the more established agents and firms continuing their business and certifications without having to start anew every three years.

l. That as a result of these violations by the Defendants and the good faith agreement by the Plaintiff with the Defendants to deal openly and fairly in its activities and business of the NFL, the Plaintiff has incurred damages, expenses and opportunity lost in income and other economic benefits in excess $850,000,000.00 over an extended time period and should be commensurately compensated and awarded punitive damages for the intentional and flagrant breach of contract and fiduciary duty

SECOND CAUSE OF ACTION
(Antitrust Violations & Breach of Fiduciary Duty)

31. The Plaintiff realleges and reiterates the allegations and assertions above as fully stated herein, and further state and alleges that:

a. The Defendants goes in and out the CBA as a matter of convenience and violates the spirit of antitrust protection(s) by unreasonably prohibiting the entry and promotion of fair and equitable competition of all Certified Agent's in the NFL's market economy by implementing a "three year rule" and engaging in conduct that usually operates against minority agents while allowing for an unfair and non-competitive advantage to the established agents and competitors in the business industry of the NFL;

b. The Defendants goes in and out the CBA as a matter of convenience to circumvent antitrust scrutiny from the courts and therein violates the spirit of antitrust protection(s) by unreasonably limiting the fair and equitable competition between Certified Agent's in the industry and selectively regulating many areas of business and law within the NFL, without the protective shields of true agents that bears no reasonable relations to the activities of the game as a professional sport.

c. The Defendants are violating the guidelines and spirit of reasonable anti-trust laws by engaging in conduct to limit the fair and equitable opportunities for competition between agents by creating an artificial "three-year rule" barrier to the qualifications and continual certifications of true agents that bears no reasonable relations to the activities of the game and the negotiations of contracts for only players that makes the active roster of an NFL team.

d. The Defendants are violating the basic rules of anti-competitive conduct in the business activities of the NFL in a discriminatory manner as the current CBA does not operate as the result of a good-faith negotiation and agreement between the NFL and NFLPA, which by its application(s) and selective enforcements in various areas of business and law is adversely impacting the status of certified agents' qualifications and representations of athletes;

e. The Defendants are acting in concert by either implied agreement and/or tacit understandings to promote illegal anti-competitive activities in the sports agent's business as they hold a position of public trust and owes a fiduciary duty to the plaintiff to honor the integrity of a free enterprise system and not allow for artificial barriers to exist to thwart competition in the industry and business of NFL activities;

f. The Defendants have been engaging in anti- competitive behavior over an extended period of time such that the court needs to carefully review its conduct notwithstanding the CBA to enjoin and prohibit the continuations of the NFL and NFLPA violations of its own rules and regulations in a discriminatory manner;

g. The Defendants are violating the good laws of business and competition by serving as leaders in the industry of professional football that takes advantage of young athletes from a large pool of minority and generally economically disadvantaged players giving rise to NCAA rules and regulations tailored as the training ground for the NFL which allows selective agents to exploit;

h. The Defendants by allowing for the selective enforcement of the rules and regulations of the NFL, CBA and the NFLPA regarding agents are acting contrary to the good laws of fair competition to compete in the economy and is doing a disservice to the new professional athletes, and the true agents seeking to represent them;

i. The Defendants have violated its implied agreement and fiduciary duty to the Plaintiff to operate in a uniform and non-discriminatory manner to insure equal opportunity and equal access to the industry of the NFL according to the laws as promulgated by the rules and regulations of the NFL, CBA and NFLPA.

j. The Defendants conduct constitute an unreasonable restraint on commerce and competition; and is an improper application of exclusive agreements under the CBA that is unlawful under the Sherman Antitrust Act, 15 U.S.C. sec. 1 and the Clayton Antitrust Act of 1914.

THIRD CAUSE OF ACTION
(Wrongful Collusion and Breach of Fiduciary Duty)

32. The Defendants hold an unique position of public trust and are conducting the business of the NFL in such a wrongful collusive manner that the entire economy under the business of NFL and its activities as a multi-billion industry is undermining the complete social and business fabric of our society by engaging in substantial discrimination against a substantial minority group, agents and others so susceptible to their anticompetitive activities that the Defendants should not be afforded the grace and protections from antitrust regulations and other good laws of the states, requiring injunctive relief and damages wherein:

   a. The Defendants hold the unique position of public trust via anti-trust exemptions that often allow for various business advantages and tax-exempt activities to promote its business as a unique sports entity that the public and individuals seeking to operate as certified agents as a profession must rely upon to be above-board in all its dealings;

   b. The Defendants have failed to operate above-board in all its dealings; and often represents its actions under the CBA and NFLPA to the public contrary to the applications of the CBA and NFLPA rules and regulations in fact via the selective enforcements of the guidelines as set for Agents and other participants of the NFL;

c. The Defendants allows for incentives of loan sharking activities and other under the table payments to young athletes for their services before making an NFL active roster of players, thereby making the 53-man active roster a fictitious water mark for continual certification by agents and the plaintiff;

d. The Defendants through its collusive activities, often styled and disguised as part of a Collective Bargaining Agreement (CBA) weakens the basis for a free and competitive economy for true agents to participate by creating its own set of rules and regulations to subjectively rule and govern the actions of players notwithstanding compliance with the good laws of the states in which the player may reside and the individual civil liberties & rights that their foreparents so rigorously struggled to obtain either through civil rights movements and/or war to be set aside;

e. The Defendants, through its collusive activities reaches beyond the CBA as the guiding light and regulations for conduct and business activities of the NFL by engaging in conduct detrimental to the economic foundation for fair and equitable competition among Agents; and have dishonored its fiduciary duty to the plaintiff(s) resulting in the abuse of its economic and monopoly power contrary to the public's interest in a fair economic and competitive system.

f. The Defendants conduct constitute an unreasonable restraint on commerce and competition in the football industry; and is an improper application of exclusive agreements unlawful under the Sherman Antitrust Act, 15 U.S.C. sec. 1, and the Clayton Antitrust Act of 1914.

Wherefore, Plaintiffs seeks treble damages and other relief, inter alia via Jury Trial

DAMAGES AND REQUEST FOR RELIEF

WHEREFORE, The Plaintiffs respectfully pray to this Court:

A. That the Defendants be adjudged in violations of its agreement with the Plaintiff as stated above, and adjudged liable for conducting the business of the NFL in violations of the CBA, in violations of the Antitrust laws under the Sherman Act and the Clayton Act in an unnecessary manner resulting in damages to the plaintiff;

B. That general and special damages be awarded for the above causes of actions, and as the Court deems just and proper, including treble damages;

C. That an Injunction issue against the continual discriminatory enforcement of the so-called "three-year rule";

D. That Cost and Judgment with interest be awarded for all expenses, loss of income and economic opportunities resulting from the actions of the Defendants according to the evidence and enlightened conscious of the Court and Jury;

E. That injunctive relief be granted from the continual violations of the laws of contract and antitrust by the Defendants; and reinstatement to the list of certified agents be granted upon the ordinary payments of annual fees and seminar attendance as would be normally required; and

F. A Jury Trial on all issues as permitted by law; Attorney fees and all other relief as the Court deems just and proper.

Respectfully Submitted,

James Dickey, Esq. pro se
c/o Players1st - SMG
P. O. Box 425234
Cambridge Mass. 02142

Certifications Pursuant to Rule 11, FRCP is hereby submitted by the signature above.