# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLAYERS1ST SPORTS MANAGEMENT GROUP-SMG, A.K.A., JAMES DICKEY, ESQ., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL FOOTBALL LEAGUE, NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, and NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, <br><br> Defendants. | Civil Action No. 1:17-cv-12295-IT |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

---

Defendant National Football League Players Association (the "NFLPA" or "Union"), pursuant to Section 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, moves to compel arbitration of all of the claims asserted against the NFLPA and to dismiss Plaintiff's Complaint (Dkt. No. 1) on that basis.[1]  Alternatively, the NFLPA moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to plead a valid legal claim.

## INTRODUCTION

*Pro se* Plaintiff James Dickey ("Dickey") has a history of "filing frivolous or vexatious suits"—resulting in a reprimand by this very Court.  *See Dickey v. City of Boston*, No. 16-cv-10636-LTS, 2016 WL 7365167, at *6 (D. Mass. Dec. 19, 2016).  His unsubstantiated claims of antitrust conspiracy and state torts against the NFLPA fare no better and should be dismissed as a matter of law and with prejudice.

*First*, all of Dickey's claims against the NFLPA must be arbitrated under the NFLPA's Regulations Governing Contract Advisors ("NFLPA Regulations").  Dickey, a former Contract Advisor, agreed to "comply with and be bound by" the NFLPA Regulations, which mandate arbitration as the "*exclusive method* for resolving *any and all* disputes that may arise from" a Contract Advisor's "activities . . . within the scope of the[] Regulations."  *See* NFLPA Regulations, App'x A, filed herewith as <u>Exhibit A</u> (emphasis added); *id.* § 5.[2]  All of Dickey's claims arise from his violation and challenges to the NFLPA Regulations, specifically the "three-year rule" under which his Contract Advisor certification expired.  Compl. ¶¶ 6-29.  In fact, Dickey has *already* submitted the claims in his Complaint to arbitration.  Accordingly, any contention by Dickey that

---

[1] A court may dismiss a complaint under the FAA upon a finding that all of the plaintiff's claims are arbitrable.  *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011).

[2] The exhibits referenced herein are verified through the Affidavit of Jonathan J. Amoona Authenticating Documents, and attached thereto.

his claims are not arbitrable is belied by his own arbitration demand and fails as a matter of law.

*Second*, Dickey's Sherman Act claim is barred by both the statutory and nonstatutory labor exemptions.  These exemptions render certain union and union-management conduct immune from antitrust scrutiny.  Dickey himself concedes that the Defendants—the National Football League ("NFL"), NFL Management Council ("NFLMC"), and NFLPA—"benefit[] from the exclusive protections and exemptions of U.S. anti-trust laws."  Compl. ¶ 29; *see also id.* ¶¶ 30(a), 32(a).

*Third,* even if the antitrust laws *did* apply to the NFLPA's alleged conduct, Dickey has failed to plead essential elements to sustain his claim:  (i) relevant market(s), (ii) antitrust injury, (iii) causation, and (iv) non-conclusory *facts* of conspiracy.  The $850 million antitrust damages claim of a former NFLPA Contract Advisor who never represented a single client should be dismissed whether or not the antitrust exemptions apply.

*Fourth,* Dickey's state-law claims are preempted by federal labor law.  Specifically, because his state-law claims are based on the NFLPA's alleged violations of the collective bargaining agreement between the NFLMC and NFLPA ("CBA") and the NFLPA Regulations, those claims require "substantial analysis" of two separate labor agreements.  As a result, a long-line of Supreme Court precedent establishes preemption requiring dismissal under Section 301 of the Labor-Management Relations Act ("LMRA").  Dickey's state-law claims are also preempted under Section 9(a) of the National Labor Relations Act ("NLRA") because they challenge the NFLPA's statutory authority under the NLRA to determine whether, to what extent, and under what conditions to delegate any of its exclusive bargaining authority to Contract Advisors.

Over the years, several NFLPA Contract Advisors who lost their certifications for varying reasons have tried to circumvent the NFLPA's arbitral framework.  A few—like Dickey—have

further tried to shift blame to the Union for their own failure to attract clients. Their lawsuits have failed.[3] Dickey's Complaint is no exception and should similarly be dismissed with prejudice.

As noted, Plaintiff is no stranger to baseless claims. His Complaint defies the following order of this Court:

> Any future complaint filed in the District of Massachusetts by Plaintiff shall state —in the same font, size, and format as the text of the complaint—the following: "Previously, one session of this Court warned Plaintiff against filing frivolous or vexatious suits. See Dickey v. City of Boston, 16-cv-10636-LTS."

*Dickey*, 2016 WL 7365167, at *6. No such statement appears in the Complaint. Nor has Dickey heeded this Court's "warn[ing] . . . against filing frivolous or vexatious suits." *Id.*[4]

## BACKGROUND

### A.    The NFLPA and Contract Advisors

Pursuant to Section 9(a) of the NLRA, 29 U.S.C. § 159(a), the NFLPA is the exclusive collective bargaining representative of all present and future NFL players. Given its status, the Union "is legally entitled to forbid *any* other person or organization from negotiating for its members" and has the "sole[]" discretion to determine "whether, to what extent and to whom to delegate [its exclusive] authority." *Collins v. Nat'l Basketball Players Ass'n*, 850 F. Supp. 1468, 1475 (D. Colo. 1991), *aff'd*, 976 F.2d 740 (10th Cir. 1992) (emphasis in original).

For decades, the NFLPA has delegated portions of its exclusive bargaining authority to certified Contract Advisors for purposes of negotiating individual player contracts with NFL

---

[3] *See Weinberg v. NFLPA, et al.*, No. 06-CV-2332-B, slip op. at 4 (N.D. Tex. June 19, 2007); *Poston v. NFLPA*, No. 06 Civ. 2249, slip op. at 2 (S.D.N.Y. May 1, 2006); *In re David Dunn*, CV 05-1000, slip op. at 4-5 (C.D. Cal. Mar. 1, 2006); *Poston v. NFLPA*, No. 02 CV 871, 2002 WL 31190142, at *6 (E.D. Va. Aug. 26, 2002); *Black* v. *NFLPA*, 87 F. Supp. 2d 1, 4-6 (D.D.C. 2000).

[4] Dickey's misconduct extends well beyond this District. In 2011, the South Carolina Bar suspended his law license and fined him based upon its findings that he had (1) created fictitious medical records, (2) willfully failed to comply with a fee arbitration award, and (3) failed to inform a client that her medical malpractice claim had been dismissed. *In re Dickey*, 395 S.C. 336, 364 (2011). Based on these findings, the Georgia Bar also suspended Dickey's law license. *In re Dickey*, 292 Ga. 12, 12-14 (2012).

Clubs, provided they comply with the terms of the NFLPA Regulations, described below.  Contract

Advisors "are permitted to negotiate player contracts in the NFL only because the NFLPA has

delegated a portion of its exclusive representational authority to them." *White v. NFL*, 92 F. Supp.

2d 918, 924 (D. Minn. 2000).

### B.      The NFLPA Regulations[5]

The NFLPA Regulations were adopted by the Union's "Officers and Player

Representatives . . . pursuant to the authority and duty conferred upon the NFLPA as the exclusive

collective bargaining representative of NFL players pursuant to Section 9(a) of the [NLRA]."  Ex.

A, Introduction.  The NFLPA's stated "objective" in "implementing the[] Regulations is to enable

players to make an informed selection of a Contract Advisor and to help assure that the Contract

Advisor will provide effective representation" to the players they represent.  *Id.* § 3.  The NFLPA

Regulations govern all aspects relating to Contract Advisors, including certification, conduct,

discipline, and dispute resolution.

### 1.      Dickey Agreed to Comply with and Be Bound by the Three-Year Rule and Mandatory Arbitration Procedure Under the NFLPA Regulations

As a condition of obtaining certification as a Contract Advisor under the NFLPA

Regulations, Dickey agreed "to comply with and be bound by the[] Regulations."  Ex. A, App'x

A.  In turn, Dickey agreed to "comply with and be bound by" the "three-year rule" under the

NFLPA Regulations, which provides:

> The Certification of any Contract Advisor who has failed to negotiate and sign a player to an NFL Player Contract (excluding Practice Squad Contracts) for at least one NFL player during any three-year period shall automatically expire at the end of such three-year period.

---

[5] In evaluating a motion to compel arbitration, courts may consider materials outside of the pleadings. *Cullinane v. Uber Techs., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652, at *4 n.9 (D. Mass. July 11, 2016).

Ex. A, § 2(G).

Dickey also agreed to "comply with and be bound by" the mandatory arbitration procedure under the NFLPA Regulations, which provides in relevant part:

> This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from . . . (4) [a]ny other activities of a Contract Advisor within the scope of these Regulations.[6]

*Id.* § 5(A).

### C. The CBA Incorporates the Three-Year Rule and Prohibits NFL Clubs from Negotiating with Contract Advisors Whose Certification Has Expired Due to a Violation of the Rule

The CBA affirms the NFLPA's "sole and exclusive authority to determine the number of agents to be certified, and the grounds for withdrawing or denying certification of an agent" and "prohibit[s] [NFL Clubs] from engaging in individual contract negotiations with any agent who is not listed by the NFLPA as being duly certified by the NFLPA . . . ."  CBA (excerpts of which are filed herewith as <u>Exhibit B</u>), Art. 48, § 1.

Additionally, the CBA provides that the "NFLPA . . . shall not delete any agent from its [certified Contract Advisor] list until that agent has exhausted the opportunity to appeal the deletion pursuant to the NFLPA's agent regulation system, *except* . . . (v) where the agent's certification has expired due to the agent's inactivity in individual contract negotiations"—*i.e.*, as a result of the three-year rule.  *Id.* (emphasis added).  Thus, the CBA incorporates the NFLPA Regulations insofar as NFL Clubs are "prohibited from engaging in" negotiations with any Contract Advisor whose certification has expired due to a violation of the three-year rule.  *Id.*

---

[6] Arbitrations under the NFLPA Regulations are "conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association."  Ex. A, § 5(E).

**D. Dickey's Contract Advisor Certification Expired Due to His Violation of the Three-Year Rule and He Invoked, and Then Subsequently Abandoned, the Mandatory Arbitration Procedure Under the NFLPA Regulations**

On or around September 30, 2016, Dickey's Contract Advisor certification expired due to his most recent violation of the three-year rule. Compl. ¶ 16. The same day, Dickey appealed the expiration of his certification, thereby invoking the mandatory arbitration procedure under the NFLPA Regulations. *Id.* ("Plaintiff . . . appealed the three (3) year rule decertification process.").[7] The basis of Dickey's appeal was his "object[ion] to the provision under [S]ection 2G of the [NFLPA Regulations] (aka 3 y[ea]r Rule)," which he contended was "an improper condition for continued certification and [a] restraint on competition among agents duly qualified to represent the players of [the] NFL." *See* September 30, 2016 Email from J. Dickey to NFL and NFLPA, filed herewith as <u>Exhibit C</u>. Dickey "request[ed] a fair and impartial hearing on all relevant issues to th[e] matter prior to the automatic decertification and/or removal from the certified list of agents . . . ." *Id.*[8]

On October 28, 2016, the NFLPA advised Dickey that his appeal hearing had been scheduled for November 22, 2016. *See* October 28, 2016 Email from T. Greene to J. Dickey, filed herewith as <u>Exhibit D</u>. On November 4, 2016, Dickey informed the NFLPA that its "unilateral scheduling" was "totally unreasonable" and that he was aware that the Union "ha[d] already removed [him] from the official list of [a]gents . . . thereby making any coordination of a fair and impartial arbitration hearing before [the arbitrator] mute [sic]." *See* Ex. D, November 4, 2017

---

[7] Dickey's certification had also expired in or around 2011 due to his first violation of the three-year rule and, just as he did in 2016, he appealed under the NFLPA Regulations. Compl. ¶¶ 6-9. Notably, Dickey does not allege that he has represented a single NFL player as a Contract Advisor.

[8] Contrary to Dickey's contention that the expiration of his Contract Advisor certification should have been stayed pending his appeal under the NFLPA Regulations, both the CBA and NFLPA Regulations are crystal clear on their face that, in the event of a violation of the three-year rule, a Contract Advisor's certification expires "automatically." *Compare* Compl. ¶¶ 7, 15, 16, 20 *with* Ex. A, § 2(G) *and* Ex. B, Art. 48, § 1.

Email from J. Dickey to T. Greene.  Dickey further stated that he was going to "determine the appropriate action to take" and would "respond accordingly." *Id.*

The next communication the NFLPA received from Dickey was the Complaint, which presents the identical challenge to the three-year rule that Dickey has already admitted is subject to mandatory arbitration under the NFLPA Regulations. *Compare*, Ex. C (challenging the three-year rule as an "improper condition for continued certification and restraint on competition among agents duly qualified to represent the players of [the] NFL") *with* Compl. at 1 (Nature of Action: "This action . . . challeng[es] the conduct of the Defendants to set up artificial barriers to the free competition[] of agents to represent NFL athletes by making agreements . . . that [have] an unreasonable 'three year' rule requirement . . . .").[9]

## **ARGUMENT**

### I.   **THE COURT SHOULD COMPEL ARBITRATION UNDER THE NFLPA REGULATIONS AND DISMISS THE COMPLAINT ON THAT BASIS**

A party seeking to compel arbitration must show (1) the existence of a valid arbitration agreement; (2) that the movant is entitled to invoke the arbitration clause; (3) that the other party is bound by the arbitration clause; and (4) that the claims are within the clause's scope. *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011). Because the FAA favors arbitration, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Courts should compel arbitration absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83

---

[9] It bears mention that Dickey may reapply for certification, with such application being subject to the NFLPA's approval in accordance with the NFLPA Regulations.  In fact, this is exactly what Dickey did following the expiration of his certification due to his first violation of the three-year rule.  Compl. ¶¶ 9-11.

(1960); *see also Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7-8 (1st Cir. 2014).

It cannot credibly be disputed that the claims asserted by Dickey here are subject to mandatory arbitration under the NFLPA Regulations.  As described above, Dickey agreed to "comply with and be bound by" the NFLPA Regulations, including the arbitration procedure thereunder as the "*exclusive method* for resolving *any and all* disputes that may arise from" a Contract Advisor's "activities . . . within the scope of the[] Regulations."  Ex. A, § 5(A) (emphasis added).  Dickey's claims fall within the broad scope of the arbitration agreement since they "arise from" the expiration of his agent certification due to his violation of the three-year rule under the NFLPA Regulations, and his other objections to the NFLPA's application of its Regulations.  Ex. A, § 2(G); Compl. at 1 (challenging Defendants' "agreements . . . that [have] an unreasonable 'three year' rule requirement"); *id.* ¶¶ 7-21.

Dickey's own arbitration demand punctuates this conclusion.  He admits that, upon the expiration of his Contract Advisor certification due to his most-recent violation of the three-year rule, he immediately invoked the mandatory arbitration procedure under the NFLPA Regulations to challenge such expiration.  Compl. ¶ 16; Ex. C ("Please take notice that I fully and respectfully object to the [three-year rule] as an improper condition for continued certification and restraint on competition among agents . . . . I hereby request a fair and impartial hearing on all relevant issues . . . .").  Dickey's belated election to abandon arbitration for litigation is of no moment.[10]

Dickey's attempt to litigate his challenge to the three-year rule should also be rejected in accordance with federal labor law.  A court "should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even

---

[10] Because Dickey has admittedly failed to exhaust his remedies under the NFLPA Regulations, the NFLPA reserves its right to argue that this Court lacks subject matter jurisdiction over this action.  *Camean v. F/V Lady Jay*, 654 F. Supp. 709, 712 (D. Mass. 1985).

through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *United Steelworkers of Am.*, 363 U.S. at 585. Here, Dickey asks this Court to rewrite the NFLPA Regulations by declaring the three-year rule illegal and to otherwise directly interfere with the NFLPA's limited delegation of its exclusive bargaining authority to Contract Advisors under the NLRA on the condition that they comply with the NFLPA Regulations. This request is improper, as the law is clear that, as the exclusive bargaining representative of all NFL players, the NFLPA has the "sole[]" discretion to determine "whether, to what extent and to whom to delegate" its exclusive bargaining authority. *Collins*, 850 F. Supp. at 1475. This Court should therefore reject Dickey's invitation to intrude on the manner in which the Union delegates its exclusive bargaining authority to Contract Advisors, and compel Plaintiff to arbitrate his claims in accordance with the NFLPA Regulations and dismiss the Complaint. *Weinberg*, No. 06-CV-2332-B, at 4; *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) (affirming dismissal of complaint where all claims were arbitrable); *Cullinane*, 2016 WL 3751652, at *10; *Cent. Mass. Area Loc., Am. Postal Workers Union v. Am. Postal Workers Union, AFL-CIO*, 704 F. Supp. 305, 308 (D. Mass. 1988) ("the policy against judicial interference with the internal affairs of unions is well established").

## II.    PLAINTIFF HAS FAILED TO STATE ANY CLAIM AS A MATTER OF LAW

Even if Dickey's claims were not subject to compulsory arbitration, the action should still be dismissed. Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to allege sufficient facts showing the plausibility of its claim, which in the context of an antitrust claim, requires that the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Where, as here, a complaint merely offers "labels and conclusions" and "naked assertion[s] devoid of

further factual enhancement," it must be dismissed. *WHDH-TV v. Comcast Corp.*, 186 F. Supp.3d 107, 112 (D. Mass. 2016) (quoting *Iqbal*, 556 U.S. at 678).

### A.     Plaintiff's Federal Antitrust Claim Fails for Multiple Reasons

Plaintiff's Sherman Act claim fails because the (alleged) conduct is (twice) exempt from antitrust scrutiny and, even if the claim were not barred by the labor exemptions, Dickey has failed to plead sufficient non-conclusory facts to state an antitrust claim.

### 1.     Plaintiff Challenges Union and Union-Management Conduct That is Exempt from the Antitrust Laws

As an initial matter, Dickey concedes that the alleged conduct at issue is exempt from the antitrust laws. *See, e.g.,* Compl. at 1 ("antitrust exemptions and protections granted to the NFL and NFLPA"); *id.* ¶ 29 ("the NFL and NFLPA benefit[] from the exclusive protections and exemptions of [the] U.S. anti-trust laws."); *id.* ¶ 30(a) ("Defendants are acting in concert to violate [their] own CBA and other antitrust laws as exempted by the [CBA]"); *id.* ¶ 32(a) ("Defendants hold the unique position of public trust via anti-trust exemptions . . . ."). Even absent Dickey's admissions, it is clear—as a matter of law—that the NFLPA's purported conduct is exempt from the antitrust laws under the statutory and nonstatutory labor exemptions.

### a.     The Statutory Labor Exemption

When (i) a labor union (ii) acts in its self-interest and (iii) not in combination with a non-labor group, the union is exempt from Sherman Act liability pursuant to the statutory labor exemption. *United States v. Hutcheson*, 312 U.S. 219, 232 (1941); *Collins,* 850 F. Supp. at 1477. Here, the Union's conduct in implementing the NFLPA Regulations (including the three-year rule) satisfies each of the three requirements for the statutory exemption to apply.

*First*, Dickey expressly alleges that the NFLPA "is . . . organized formally as a Labor Union and acting under the protections and benefits of U.S. antitrust laws." Compl. ¶ 2.

*Second*, Dickey nowhere alleges that the NFLPA was not acting in its self-interest in promulgating its Regulations.[11]   A labor group acts in its self-interest when its actions bear a reasonable relationship to a legitimate union interest.   *Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 640 F.2d 1368, 1380 (1st Cir. 1981), *aff'd*, 456 U.S. 212 (1982).   As the exclusive bargaining representative of all current and future NFL players, the Union has an undeniable interest in ensuring that Contract Advisors who receive a limited delegation of the Union's bargaining authority for the purposes of negotiating individual player contracts on behalf of the Union's player membership are subject to certain standards.   In fact, the NFLPA's stated "objective" in "implementing the[] Regulations is to enable players to make an informed selection of a Contract Advisor and to help assure that the Contract Advisor will provide effective representation" to the players they represent.   Ex. A, § 3.   The three-year rule that Dickey challenges here fulfills that objective as a matter of law because it functions as a means of ensuring the "competence or ability" of Contract Advisors to effectively represent the Union's members.   Ex. A, §§ 1(B), 2(G).   Accordingly, the NFLPA Regulations and the three-year rule thereunder "fulfill[] legitimate union purposes" since they protect the NFLPA's "interest in assuring that its role in representing professional [football] players is properly carried out."   *Collins*, 850 F. Supp. at 1477; *see also H.A. Artists & Assocs. v. Actors Equity Ass'n*, 451 U.S. 704, 721 (1981) (agent regulations imposed by actors union were "clearly designed to promote [union's] legitimate self-interest" and therefore were exempt from the antitrust laws).

*Third*, Plaintiff has not alleged, and cannot allege, that the NFLPA has combined with a non-labor group to adopt the NFLPA Regulations.   The NFLPA Regulations are unilaterally

---

[11] The Court may consider the NFLPA Regulations in evaluating the Union's 12(b)(6) motion since they are incorporated by reference into the Complaint.   *Alston v. Town of Brookline, Mass.*, No. CV 15-13987-GAO, 2017 WL 1536213, at *3 (D. Mass. Apr. 26, 2017).   The Court may also take judicial notice of the NFLPA Regulations.   *Id.*; https://www.nflpa.com/about/rules-and-regulations (last visited Feb. 2, 2018).

implemented by the Union.  Indeed, the NFLPA Regulations state that the Union's "Officers and Player Representatives"—not the NFL—"adopted the NFLPA Regulations."  Ex. A, Introduction.

Plaintiff not only challenges the NFLPA's conduct in implementing and enforcing the NFLPA Regulations, but also in agreeing to the CBA provisions corresponding to the three-year rule—but the statutory exemption applies to this conduct too.[12]  The first two reasons set forth above apply with equal force to the NFLPA's CBA agreement.  And, as to the third requirement for applying the statutory exemption, even though the NFLPA did agree with the NFLMC (a "non-labor group") to the CBA's terms, that does not displace the statutory exemption unless "those agreements deny rival employers access to the market or expressly control wages for the purpose of destroying those rivals; that is, when unions 'aid and abet businessmen who are violating the [Clayton] Act.'"  *Collins,* 850 F. Supp. at 1477 (citation omitted); *Allen Bradley, Co. v. Local Union No. 3, IBEW*, 325 U.S. 797, 808 (1945) (statutory labor exemption does not apply when union activity is designed to help employers control competition and prices).  The Complaint contains no allegation—plausible or otherwise—that the three-year rule was agreed to by the Union and the NFLMC for the purpose of denying access to a rival employer of the NFL.  (Indeed, the NFL does not even have a rival employer for major league professional football players in the United States).  Moreover, it is undisputed that the CBA was entered into through arms-length collective bargaining—not at the "behest of" the NFL.  *Collins,* 850 F. Supp. at 1478; Ex. B, Preamble (The CBA "is the product of bona fide, arm's length collective bargaining . . . .").

### b.  The Nonstatutory Labor Exemption

Dickey's antitrust challenge to the three-year rule is also precluded by the nonstatutory

---

[12] The CBA is also incorporated by reference into the Complaint, and the Court may take judicial notice of the CBA.   https://nfllabor.files.wordpress.com/2010/01/collective-bargaining-agreement-2011-2020.pdf (last visited Feb. 2, 2018).

labor exemption.   In accordance with federal labor policy to promote collective bargaining, the nonstatutory labor exemption immunizes from antitrust challenge union-employer agreements that are reached through *bona fide*, arm's-length bargaining and contain terms that are not a product of an initiative by the employer group.  *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, 381 U.S. 676, 690-91 (1965); *Collins*, 850 F. Supp. at 1481.   The nonstatutory labor exemption applies, as a matter of law, to the NFLPA's agreement to the three-year rule set forth in the CBA.   The CBA is the product of *bona fide*, arm's-length collective bargaining and Dickey does not plead any contrary factual allegations.[13]   Ex. B, Preamble.   Dickey also fails to allege that the CBA's terms, including the three-year rule, are a product of the NFL's initiative.

*Clarett v. NFL* is instructive.   369 F. 3d 124, 139 (2d Cir. 2004).   There, the Second Circuit held that the challenged NFL draft eligibility rules were beyond the reach of the antitrust laws because the rules were a mandatory subject of collective bargaining between the NFL and NFLPA. *Id.* at 141.   The court so held even though—unlike here—the NFLPA had not specifically bargained over the eligibility rule in question.   *Id.* at 142 (holding that the NFLPA had agreed under the CBA to waive challenges to certain provisions of the NFL's Constitution & Bylaws, including those which set forth the draft eligibility rules).   Here, the Complaint admits that the challenged three-year rule is a part of the CBA.   *See, e.g.*, Compl. ¶ 7 ("Under the guidelines set forth [in the CBA], the Plaintiff was subjected to a three (3) year rule").   As a result, "[i]t would disregard [labor law] policies completely . . . to allow" Dickey "to undo" the NFLPA's CBA bargain.   *Clarett,* 369 F. 3d at 143.

---

[13] Dickey only makes the conclusory allegation that the "CBA does not operate as the result of a good-faith negotiation," but fails to offer any specific, plausible allegations to support his bald assertion.   Compl. ¶ 31(d).   As such, the allegation is entitled to no weight.

### 2. Even if the Antitrust Laws Applied to the NFLPA's Challenged Conduct, Plaintiff Has Failed to State a Cognizable Claim

### a. Dickey Has Failed to Plead a Relevant Market

As the Supreme Court has held, certain agreements among horizontal competitors "threaten[] the central nervous system of the economy" and, as a result, may be condemned as *per se* violations of the Sherman Act. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 23 (1979) (internal quotations and citations omitted); *see also United States v. Topco*, 405 U.S. 596, 607. But where the "anticompetitive effects of given restraints are far from intuitively obvious, the rule of reason demands a more thorough enquiry into the consequences of those restraints[.]" *Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 759 (1999); *see also New England Carpenters Health Benefits Fund v. McKesson Corp.*, 573 F. Supp. 2d 431, 436 (D. Mass. 2008) (establishing "a plausible Sherman Act Section 1 violation under the rule of reason . . . requires an onerous multi-part showing . . . that the alleged agreement involved the exercise of power in a relevant economic market").

Here, Dickey does not, and cannot, allege an agreement among horizontal competitors that would be subject to the *per se* rule, as the NFL and NFLPA are not market competitors in any sense. Accordingly, Dickey's antitrust claim is subject to the rule of reason, which requires pleading plausible facts of a relevant market. But even to the limited extent that Dickey's Complaint loosely refers to "industries" and "business markets," it includes no plausible *facts* about cross-elasticity of demand, interchangeability of products, geographic scope, or any other facts necessary to allege a relevant market. His antitrust claim should thus be dismissed. *Queen City Pizza Inc. v. Domino's Pizza, Inc.*, 124 F. 3d 430, 436 (3d Cir. 1997) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable

interchangeability and cross-elasticity of demand . . . a motion to dismiss may be granted."); *New England Carpenters Health Benefits Fund*, 573 F. Supp. 2d at 435-36.

### b.      Dickey Has Failed to Plead Antitrust Injury

To state a Sherman Act claim, a plaintiff must not merely allege fact-of-injury—but an injury "of the type the antitrust laws were intended to prevent," *i.e.*, harm to *competition*, not just to an alleged competitor. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89 (1977). The alleged injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Id.* at 489. Here, however, the only harm that Dickey alleges is to *himself. See, e.g.*, Compl. ¶ 30(d) ("Defendants have violated its agreement and fiduciary duty to the Plaintiff"); *id.* ¶ 30(l) ("Plaintiff has incurred damages, expenses and opportunity lost in income and other economic benefits in excess [of] $850,000,000.00 over an extended time period and should be commensurately compensated . . . ."); *id.* Damages and Relief ¶ A. Moreover, in the absence of allegations about what, if any, relevant market was supposedly harmed by Defendants' purported conduct, one is left to guess about what sort of *competitive* harm could even theoretically be implicated by the mere fact that a single Contract Advisor, Dickey, who has no player-clients, is no longer certified as a Contract Advisor. *Sullivan v. Tagliabue*, 828 F. Supp. 114, 117-18 (D. Mass. 1993), *aff'd*, 25 F.3d 43 (1st Cir. 1994) (a restraint imposed on one individual did not constitute antitrust injury where there was "no indication" of "any palpable effect on overall competition in the [relevant] market").

### c.      Dickey Has Failed to Allege Facts to Support His Conspiracy Claim

To plead an unlawful conspiracy under Section 1 of the Sherman Act, a plaintiff must plead an agreement to a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). Merely alleging

that the Defendants reached an agreement—*i.e.*, the CBA—is insufficient without more specific allegations of an anticompetitive design. *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).  Here, the Complaint offers no inkling as to how the Defendants' CBA is in furtherance of a "conscious commitment to a common scheme designed to achieve an unlawful objective."  *Monsanto Co.*, 465 U.S. at 768.  Dickey argues that Defendants wish to favor established Contract Advisors over aspirers (Compl. ¶ 30(k)), but this is just another conclusory assertion for which the Complaint offers no factual support.  *See Gilbuilt Homes, Inc. v. Cont'l Homes of New England, a Div. of Wylain, Inc.*, 667 F.2d 209, 210 (1st Cir. 1981) ("Despite plaintiff's liberal use of terms such as 'conspire,' it failed to allege facts suggesting that the decision to terminate plaintiff as a dealer was . . . exercised in furtherance of an unlawful arrangement[.]") (internal quotations omitted); *Aldabe v. Cornell Univ.*, No. CV 16-12268-NMG, 2017 WL 5178783, at *4 (D. Mass. Nov. 7, 2017).

### d. Dickey Has Failed to Plead Plausible Facts That Defendants' Conduct Was a Material Cause of His Claimed Injury

In addition to antitrust injury, Dickey must also plead that the Defendants' conduct is a material cause of his claimed injury, and that other forces did not heavily contribute to such injury. Phillip Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law § 3(f) (4th ed. 2016); *Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 15 (D. Mass. 2002).

Dickey fails to meet this pleading requirement as well.  Specifically, as Dickey admits, his Contract Advisor certification expired in 2016 due to his second violation of the three-year rule— *i.e.*, because *he* failed to sign an NFL player to a contract.  Compl. ¶¶ 16-18.  Put differently, the expiration of his certification pursuant to the three-year rule was a result of his own conduct—not

that of the Defendants—and even Dickey does not allege otherwise.[14]  Thus, even if Plaintiff had

alleged plausible facts of a conspiracy in a relevant market that inflicted harm to competition—he

has alleged none of those things—there still would be no basis to plausibly infer that this conduct

is what caused Dickey's failure to sign players, as Dickey has never once before represented any

player.  The fact that Dickey avers he lost $850 million in Contract Advisor fees as a result of the

NFLPA's alleged conduct underscores the implausibility of his claim.

## III.    PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED

Dickey's state-law claims for breach of contract and fiduciary duty center around the

NFLPA's alleged breach of the CBA and NFLPA Regulations.  In particular, Dickey alleges that

the NFLPA selectively enforces those agreements, including the three-year rule, by permitting

more "established" Contract Advisors to breach those agreements in myriad ways.  Compl. ¶¶

30(a)-(l), 32(b).  As set forth below, such claims are preempted under federal labor law.

### A.    Dickey's State-Law Claims Are Preempted Under the LMRA

State-law claims that require "substantial analysis" of a labor agreement are preempted

under Section 301 of the LMRA.  29 U.S.C. § 185; *Caterpiller Inc. v. Williams,* 482 U.S. 386, 394

(1987) ("[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of

action for violation of contracts between an employer and a labor organization.") (internal

quotations and citation omitted); *Troconis v. Lucent Techs., Inc.*, 160 F. Supp. 2d 150, 154-55 (D.

Mass. 2001); *see also Black*, 87 F. Supp. 2d at 4 ("State law based claims that depend on

construction and application of terms in a collective bargaining agreement are preempted.").

Here, Dickey's allegations demonstrate that his state-law claims cannot be resolved

---

[14] It also bears emphasis that Dickey attributes the expiration of his Contract Advisor certification due to his initial failure to comply with the three-year rule to a "family illness beyond the agent's control" and "other extenuating circumstances"—*i.e.*, not to any conduct on the part of the Defendants. Compl. ¶ 8.

without "substantial analysis" of two labor agreements: the CBA and the NFLPA Regulations.[15]

Ultimately, these claims boil down to allegations that the NFLPA has breached the CBA and Agent

Regulations, allegations that the NFLPA selectively enforced the CBA and NFLPA Regulations,

and an attack on the Regulations, including the three-year ruled embodied therein.  Suffice it to

say, it is impossible to adjudicate claims concerning the CBA and NFLPA Regulations without

"substantial analysis" of those same labor agreements.  For example, Dickey alleges:

- "The NFLPA and the NFL . . . acted in violation of its [sic] Collective Bargained [sic] Agreement . . . by allowing for the automatic decertification of an Agent before providing for any reasonable exhaustion of the appeals process . . . ."  Compl. ¶ 20;

- "The NFLPA and NFL conduct[] the business of the NFL in continual violation[] of its [sic] collective bargaining agreement . . . ."  *Id.* ¶ 25;

- "The Defendants are violating the agreement and contract with the Plaintiff . . . by allowing various agents . . . to violate the guidelines, rules and regulations of the CBA and NFLPA . . . ."  *Id.* ¶ 30(d);

- "The Defendants have violated their agreement, expectations and fiduciary duty to . . . honor the same rules and regulations as promulgated in the CBA and NFLPA Agent[] Regulations by selectively enforcing a three (3) year rule . . . ."  *Id.* ¶ 30(k).

As the above allegations make plain, there is simply no way to evaluate the merits of

Dickey's state-law claims without a "substantial analysis" of the NFLPA Regulations and the CBA

because Dickey's claims are necessarily dependent on the proper application of those two

agreements.  However, Supreme Court precedent precludes such an inquiry.  *Allis-Chalmers Corp.*

*v. Lueck*, 471 U.S. 202, 211 (1985) ("[Q]uestions relating to what the parties to a labor agreement

agreed, and what legal consequences were intended to flow from breaches of that agreement, must

---

[15] The NFLPA Regulations "were formulated in accordance with the [CBA]," and thus state-law claims that require a "substantial analysis" of the NFLPA Regulations are completely preempted under the LMRA. *Black*, 87 F. Supp. 2d at 4; *see also* Hr'g Tr. 48:6-13, *Weinberg.*, No. 06-CV-2332-B (June 14, 2007), excerpts of which are filed herewith as <u>Exhibit E</u>. ("These claims here are preempted due to the presence of the NFLPA and the regulations and the LMRA and the accompanying case authority that governs that.").

be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."); *Black*, 87 F. Supp. 2d at 4 (Contract Advisor's state-law claims turned upon the application of the NFLPA Regulations and thus could "not be described as independent of the collective-bargaining agreement.").

### B.      Dickey's State-Law Claims are Also Preempted Under the NLRA

It is also well-settled that state-law claims challenging a union's exclusive bargaining authority under Section 9(a) of the NLRA are completely preempted. *Condon v. Local 2944, United Steelworkers of Am.*, 683 F.2d 590, 594-95 (1st Cir. 1982) ("A union's rights and duties as the exclusive bargaining agent in carrying out its representational functions is precisely such an area [where state law should be preempted]; Congress has occupied th(e) field and closed it to state regulation.") (internal citations and quotations omitted).

Such NLRA preemption applies here because Contract Advisors in the NFL "are permitted to negotiate player contracts . . . only because the NFLPA has delegated a portion of its exclusive representational authority" under Section 9(a) of the NLRA to them. *White*, 92 F. Supp. at 924; Ex. B, Art. 48, § 1 ("[P]ursuant to federal labor law, the NFLPA will regulate the conduct of agents . . . . Clubs are prohibited from engaging in individual contract negotiations with any agent who is not . . . duly certified by the NFLPA").

Here, Dickey's state-law claims challenge the propriety and application of the NFLPA Regulations, including the three-year rule thereunder. *See, e.g.*, Compl. ¶¶ 30(d)-(k). Such claims are therefore "no more than another challenge of the [NFLPA's] right to exercise its representational monopoly" and determine "whether, to what extent and to whom to delegate [its exclusive bargaining] authority." *Collins*, 850 F. Supp. at 1475, 1481 (NBA players' union decertification of agent was "by definition privileged"); Compl. ¶ 30(d)-(k). Dickey's state claims are thus also preempted under Section 9(a) of the NLRA.

Finally, Plaintiff fails to sufficiently allege plausible facts to state a claim for relief under any of his apparent state-law causes of action (breach of contract and breach of fiduciary duty). Among other things, the Complaint lacks factual allegations to support Plaintiff's observation of Defendants' alleged "disparity in treatment, promulgations and applications of rules and regulations" between Contract Advisors, that Defendants used the CBA to engage in such conduct, or that Defendants owed a fiduciary duty to Plaintiff by virtue of their contractual relationship. Compl. ¶¶ 12, 30(a)-(l).  On the contrary, it was Plaintiff—as a former certified Contract Advisor of the NFLPA (not the other way around)—who owed a fiduciary duty as a matter of law.

## CONCLUSION

For the reasons set forth above, this Court should compel arbitration of all of Dickey's claims against the NFLPA and dismiss the Complaint against it pursuant to the FAA. Alternatively, this Court should dismiss the Complaint against the Union for failure to state a claim.  In either scenario, dismissal should be with prejudice as amendment would be futile.

Respectfully submitted,

/s/ Russell Beck
Russell Beck, BBO No. 561031
  rbeck@beckreed.com
Hannah T. Joseph, BBO No. 688132
  hjoseph@beckreed.com
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Telephone: (617) 500-8660
Facsimile: (617) 500-8665

Jeffrey L. Kessler
Jonathan J. Amoona
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Email: JKessler@winston.com
Email: JAmoona@winston.com

Dated:  February 5, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filling (NEF) and paper copies will be sent to those indicated as non-registered participants on this 5th day of February 2018.

/s/ Russell Beck
Russell Beck