UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES DICKEY, also known as<br>Players1st Sports Management Group - SMG, | *<br>*<br>* | |
| Plaintiff, | *<br>* | |
| v. | *<br>* | Civil Action No. 17-cv-12295-IT |
| NATIONAL FOOTBALL LEAGUE,<br>NATIONAL FOOTBALL LEAGUE<br>MANAGEMENT COUNCIL, and NATIONAL<br>FOOTBALL LEAGUE PLAYERS<br>ASSOCIATION, | *<br>*<br>*<br>*<br>*<br>* | |
| Defendants. | * | |

MEMORANDUM AND ORDER

September 26, 2018

Plaintiff James Dickey, proceeding *pro se*, has filed a Complaint [#1] alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, antitrust violations, and wrongful collusion against Defendants the National Football League ("NFL"), the National Football League Management Council ("NFLMC"), and the National Football League Players Association ("NFLPA"). The NFLPA has filed a Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, to Dismiss the Complaint for Failure to State a Claim [#16]. The NFL and NFLMC have filed a Motion to Dismiss the Complaint [#23]. For the reasons that follow, the NFLPA's motion to compel arbitration is DENIED. The NFLPA's alternative motion to dismiss for failure to state a claim and the NFL and NFLMC's motion to dismiss are ALLOWED.

I.  Background

   a. *Facts Relevant to the Motion to Dismiss*[1]

The NFL is a professional football league that consists of member teams known as "clubs." Compl. ¶ 4 [#1]. The NFLPA is the labor union representing NFL players. Id. ¶ 2; see also Aff. of Jonathan J. Amoona Ex. B ("2011 Collective Bargaining Agreement") xv [#18-2]. Owners of individual NFL clubs negotiate collectively with the NFLPA through the NFLMC, a professional management group that serves as the sole and exclusive bargaining representative of NFL club owners. Compl. ¶ 3. Over time, the NFLPA and NFLMC have entered into various iterations of a Collective Bargaining Agreement ("CBA"), including in 2011. Id. ¶¶ 6, 9-11.

Pursuant to the CBA and its guidelines, agents seeking to represent players in individual contract negotiations must be certified by the NFLPA. Compl. ¶ 6. The CBA provides that "[t]he NFL and the Clubs recognize that, pursuant to federal labor law, the NFLPA will regulate the conduct of agents who represent players in individual contract negotiations with Clubs." 2011 CBA Art. 48, § 1. The CBA prohibits clubs "from engaging in individual contract negotiations with any agent who is not listed by the NFLPA as being duly certified by the NFLPA in accordance with its role as exclusive bargaining agent for NFL players." Id. The CBA further provides that the NFL Commissioner must disapprove any contract between an individual player and NFL club in which the player is represented by an agent who is not NFLPA-certified. Id. § 2. Clubs that knowingly enter into such prohibited contracts are subject to fines. Id. § 3.

Dickey successfully applied for certification in 2007 and 2008. Compl. ¶ 6. Under the CBA guidelines, he was required to abide by the "Three Year Rule." Id. ¶ 7. This rule provides

---

[1] A court resolving a motion to dismiss accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. See Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 11 (1st Cir. 2010).

2

for automatic expiration of an agent's certification if the agent is unable to negotiate an individual contract on behalf of a football player to an NFL club's active fifty-three-man roster within three years. Id. Because Dickey was unable to meet this requirement, his certification expired in 2011. Id. ¶ 8. Dickey alleges that he filed a notice of appeal, but was not granted an appeal hearing because of ongoing collective bargaining negotiations. Id. ¶ 9.

Dickey successfully applied for recertification sometime after the NFLPA and NFLMC entered into a new CBA in 2011. Compl. ¶ 11. Dickey alleges that he observed disparity in treatment of new and "minority" agents, secret meetings and agreements between established agents and the NFLPA, and practices that permitted established agents to avoid decertification despite violating NFLPA rules and regulations. Id. ¶¶ 12-15. With respect to the Three Year Rule, Dickey alleges that the NFLPA and NFL allowed several agents to "act as one" by signing off on the same individual player's contract to an active roster, thereby allowing some agents to avoid decertification despite minimal involvement in negotiating contracts. Id. ¶ 21. Dickey was again decertified pursuant to the Three Year Rule, effective October 1, 2016. Id. ¶¶ 16, 18.

b. *Additional Facts Relevant to the Motion to Compel Arbitration*[2]

The "guidelines" referenced in Dickey's Complaint are regulations adopted by the NFLPA. See Aff. of Jonathan J. Amoona Ex. A ("NFLPA Contract Advisor Regulations") Introduction [#18-1].[3] The "Three Year Rule" provision of these Regulations provides: "[t]he

---

[2] For purposes of deciding a motion to compel arbitration, the court will consider facts alleged in the Complaint as well as the documents submitted by the parties in connection with the motion. See Soto v. State Indus. Prods., Inc., 642 F.3d 67, 72 n.2 (1st Cir. 2011) (court can consider documents outside scope of complaint in deciding motion to compel arbitration).

[3] The NFLPA Contract Advisor Regulations state that the regulations adopted in 2011 were amended in August 2016. Dickey was certified prior to August 2016. Thus, the 2011 version of the regulations would have been in effect at the time of his application. No party has raised any issue, however, as to any differences between the 2011 and 2016 versions. Accordingly, the

Certification of any Contract Advisor who has failed to negotiate and sign a player to an NFL Player Contract (excluding Practice Squad Contracts) for at least one NFL player during any three-year period shall automatically expire at the end of such three-year period." Id. § 2(G). The Regulations also include provisions for arbitration, including arbitration in connection with disciplinary action. Id. §§ 5, 6(E).

Appendix A to the NFLPA Contract Advisor Regulations is the Application for Certification, which provides that the applicant "agree[s] to comply with and be bound by these Regulations . . . and any subsequent amendments thereto," and that the applicant agrees that if he or she is "denied certification, or if subsequent to obtaining certification it is revoked or suspended pursuant to the Regulations, the exclusive method for challenging any such action is through the arbitration procedure set forth in the Regulations." Id. App. A [#18-1].

On September 30, 2016, Dickey wrote the NFLPA stating his objection "to the provision under section 2G of the NFLPA's Regulations Governing Contract Advisors (aka 3yr Rule) as an improper condition for continued certification and restraint on competition among agents duly qualified to represent the players of the NFL, and as under the guidance of the NFLPA." Aff. of Jonathan J. Amoona Ex. C ("September 2016 Email") [#18-3]. He requested "a fair and impartial hearing on all relevant issues to this matter prior to the automatic decertification and/or removal from the certified list of agents as submitted to the NFL & NFLMC." Id. The NFLPA notified him that it had scheduled a hearing before the NFLPA's special arbitrator in Washington, D.C., on November 22, 2016. Aff. of Jonathan J. Amoona Ex. D ("October and November 2016 Emails") [#18-4]. Dickey objected to the date based on his schedule and noted that he had learned that the NFLPA had already removed him from the official list of agents. Id.

---

court proceeds based on the 2016 version presented to the court.

II. Motion to Compel Arbitration

The NFLPA has moved pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to compel arbitration of all of Dickey's claims and to dismiss the Complaint on that basis. As the party seeking to compel arbitration, the NFLPA must show "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quotation omitted).

The NFLPA argues that Dickey "agreed to 'comply with and be bound by' the NFLPA Regulations, including the arbitration procedure thereunder." Mem. in Supp. of NFLPA's Mot. 8 [#17]. In support it proffers the NFLPA Contract Advisor Regulations and the blank Application for Certification form attached thereto as Appendix A.[4] The NFLPA has not provided the court with a signed copy of that form, but as Dickey does not dispute that he signed such an agreement, the court assumes that there is an agreement to arbitrate to the extent set forth in the Application for Certification form and NFLPA Contract Advisor Regulations.

The more difficult issue for the NFLPA is establishing that the claims asserted here come within the scope of that agreement. Had Dickey challenged the denial of a certification, that claim would fall squarely within the arbitration agreement. See NFLPA Contract Advisor Regulations, App. A, Application for Certification (agreeing that the exclusive method for challenging the denial of a certification is through the arbitration procedure set forth in the Regulations); id. § 5(A)(1) ("This arbitration procedure shall be the exclusive method for

---

[4] The NFLPA also proffers Dickey's request for a hearing as support for its motion. Aff. of Jonathan J. Amoona Ex. C ("September 2016 Emails") [#18-3]. That request did not invoke any specific arbitration procedures, and did not separately affirm an agreement to arbitrate. Accordingly, that request does not itself evidence an agreement to use arbitration as the *exclusive* method for resolving his dispute.

resolving any and all disputes that may arise from the . . . [d]enial by the NFLPA of an applicant's Application for Certification"); id. §§ 2(D), 5 (setting forth the procedure for filing an appeal from denial of certification and invoking arbitration). Similarly, if after becoming certified, Dickey had challenged the revocation or suspension of his certification, that claim also would fall squarely within the arbitration agreement. See NFLPA Contract Advisor Regulations, App. A, Application for Certification (agreeing that the exclusive method for challenging the revocation or suspension of a certification is through the arbitration procedure set forth in the NFLPA Contract Advisor Regulations); id. § 6(E) (setting forth the procedure for filing an appeal and invoking arbitration challenging revocation or suspension of certification). But Dickey's Complaint does not challenge the denial of or any revocation or suspension of a certification. Instead, it challenges the NFLPA, NFL, and NFLMC's enforcement (or selective enforcement) of the Three Year Rule and the expiration of Dickey's certification.

The NFLPA argues that these challenges fall within § 5(A)(4) of the NFLPA Contract Advisor Regulations. That section provides that the arbitration procedure set forth in the Regulations "shall be the exclusive method for resolving any and all disputes that may arise from . . . *[a]ny other activities* of a Contract Advisor within the scope of these Regulations . . . ." (Emphasis added). The Regulations define Contract Advisor "activities" to include:

> the providing of advice, counsel, information or assistance to players with respect to negotiating their individual contracts with Clubs and/or thereafter in enforcing those contracts; the conduct of individual compensation negotiations with the Clubs on behalf of players; and any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent NFL players and the NFLPA in individual contract negotiations, including the handling of player funds, providing tax counseling and preparation services, and providing financial advice and investment services to individual players.

Id. §1(B). As Dickey highlights, Section 5(A)(4) applies only to disputes over a Contract

6

Advisor's activities, and not to disputes over the NFLPA's actions.

Moreover, the arbitration provision in § 5(A)(4), like the provision in §§ 5(A)(2), (3), (5) and (6),[5] and unlike the provisions concerning the denial of a certification or imposition of discipline and discharge discussed above, can only be invoked in disputes between a Contract Advisor and an NFL player, or between multiple Contract Advisors, and not in disputes between Contract Advisors and the NFLPA. Section 5(B) explains that "a dispute under Section 5(A)(2)-(6) shall be initiated by the filing of a written grievance either by the player or Contract Advisor." For grievances initiated by a Contract Advisor, Section 5(B) then details the steps that must be followed with regard to a grievance against a player or another Contract Advisor. Section 5(B) does not contemplate any grievances against the NFLPA.

---

[5] Sections 5(A)(2)-(6) provide:

> This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from the following:
>
> …
>
> (2) Any dispute between an NFL player and a Contract Advisor with respect to the conduct of individual negotiations by a Contract Advisor;
>
> (3) The meaning, interpretation or enforcement of a fee agreement;
>
> (4) Any other activities of a Contract Advisor within the scope of these Regulations;
>
> (5) A dispute between two or more Contract Advisors with respect to whether or not a Contact Advisor interfered with the contractual relationship of a Contract Advisor and player . . . ;
>
> (6) A dispute between two or more Contract Advisors with respect to their individual entitlement to fees owed, whether paid or unpaid, by a player-client . . . .

NFLPA Contract Advisor Regulations § 5(A)(2)-(6).

That the § 5(A) mandatory arbitration provision does not apply to the Three Year Rule is confirmed by the absence of any apparent means to challenge the application of the Three Year Rule. Section 2(G) of the NFLPA Contract Advisor Regulations provides that "[t]he Certification of any Contract Advisor who has failed to negotiate and sign a player to an NFL Player Contract (excluding Practice Squad Contracts) for at least one NFL player during any three-year period shall automatically expire at the end of such three-year period." Further, the CBA provides that "[t]he NFLPA agrees that it shall not delete any agent from its list until that agent has exhausted the opportunity to appeal the deletion pursuant to the NFLPA's agent regulation system, except: . . . (v) where the agent's certification has expired due to the agent's inactivity in individual contract negotiations." 2011 CBA Art. 48, § 1. No provision in either the CBA or the Regulations provides any avenue for challenging this automatic expiration. As such, § 5(A)'s arbitration mandate does not apply to expirations under the Three Year Rule.

For each of these reasons, the NFLPA's motion is denied insofar as it seeks to compel arbitration pursuant to the Federal Arbitration Act.

    III.    <u>Motions to Dismiss for Failure to State a Claim</u>

All Defendants move to dismiss Dickey's Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 554, 559 (2007)). A court resolving a motion to dismiss accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. <u>Id.</u> at 678-79. When, as here, a plaintiff files a complaint *pro se*, the court reads the allegations in the complaint more liberally. See <u>Rodi v. Southern New England Sch. Law</u>, 389 F.3d 5, 13 (1st

Cir. 2004). While courts are generally limited to the complaint in deciding motions to dismiss, a narrow exception exists for, *inter alia*, "documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Because Dickey's Complaint repeatedly references the CBA, it will be considered in deciding Defendants' motions to dismiss.

### a. *Federal Antitrust Claims*

Dickey claims all Defendants are violating federal antitrust laws by "unreasonably limiting the fair and equitable competition" between Contract Advisors and "weaken[ing] the basis for a free and competitive economy for true agents." Compl. ¶¶ 31-32. According to Dickey, the Three Year Rule is an artificial barrier to entry for new agents seeking to represent NFL players. Additionally, he claims that all three Defendants selectively enforce the Three Year Rule in a discriminatory way to the benefit of more established agents. Dickey contends that the establishment and enforcement of the Three Year Rule undermines free competition of sports agents in the professional football industry. According to Dickey, this violates the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, which prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." Dickey also contends that this conduct violates the Clayton Antitrust Act of 1914, 15 U.S.C. § 1 *et seq*.

Defendants vigorously dispute that Dickey has standing to bring these antitrust claims and that the facts alleged state claims for antitrust violations absent an exemption. The court need not address those issues, however, as the anticompetitive activities Dickey alleges fall within the labor exemptions to the antitrust laws. As the Supreme Court has recognized, "there is an inherent tension between national antitrust policy, which seeks to maximize competition, and national labor policy, which encourages cooperation among workers to improve the conditions of employment." H.A. Artists & Assocs., Inc. v. Actors' Equity Ass'n, 451 U.S. 704, 713 (1981).

"To balance the competing federal policies supporting organized labor on one hand and business competition on the other, two labor exemptions from the antitrust laws have been developed, one statutory and one nonstatutory." American Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 76 (1st Cir. 2008).

Dickey's antitrust claims challenge both the NFLPA Contract Advisor Regulations and the CBA. His challenges to the NFLPA's unilateral enforcement of its Contract Advisor Regulations are covered by the statutory labor exemption. His challenges to all Defendants' joint enforcement of the CBA are covered by the nonstatutory labor exemption.

i. *Antitrust Challenges to the NFLPA Regulations*

Dickey challenges the application of the NFLPA Contract Advisor Regulations insofar as those Regulations provide for automatic expiration of certification under the Three Year Rule. This challenge is covered by the statutory labor exemption, which derives from "three interlacing statutes" – the Sherman Act, the Clayton Act, and the Norris-LaGuardia Act – and insulates union activity from antitrust challenges "[s]o long as a union acts in its self-interest and does not combine with non-labor groups." United States v. Hutcheson, 312 U.S. 219, 232 (1941). There is no dispute that the NFLPA is a labor union, as Dickey so alleges. See Compl. ¶ 2. The question is whether it acted in its self-interest and whether it combined with non-labor groups.

By allowing agents to represent individual players, the NFLPA delegates some of its responsibilities as the exclusive representative of NFL players. Requirements and restrictions that the NFLPA imposes on its agents are designed to ensure that those to whom the union delegates these responsibilities meet certain standards. These include, for example, regulations designed to ensure agents' knowledge of and ability to faithfully apply the CBA, protect against misconduct, and prevent the charging of excessive fees. The Regulations expressly state that

10

their purpose is "to help assure that the Contract Advisor will provide effective representation at fair, reasonable, and uniformly applicable rates to those individual players the Contract Advisor represents." NFLPA Contract Advisor Regulations § 3. The Three Year Rule is an integral part of these standards, as it requires agents to demonstrate their qualifications to represent NFLPA members by either (1) successfully negotiating at least one contract or (2) obtaining recertification. In these ways, the Regulations and Three Year Rule contained therein are "clearly designed to promote the union's legitimate self-interest." H.A. Artists, 451 U.S. at 721; see also Collins v. Nat'l Basketball Players Ass'n, 850 F. Supp. 1468, 1477 (D. Colo. 1991) (restrictions governing sports agents in professional basketball furthered union's self-interest).

Further, insofar as it enforced its own Contract Advisor Regulations, the NFLPA did not combine with non-labor groups. While Dickey's claims are based on the alleged joint action of all Defendants in preventing agents whose certification had expired from representing NFLPA members, the union exercises exclusive control over how and whether an agent's certification is deemed expired. Nowhere in his Complaint does Dickey plausibly allege that the NFL or NFLMC enacted or implement the NFLPA's Contract Advisor Regulations. Thus, to the extent Dickey challenges the NFLPA's unilaterally implemented regulations, these challenges fall squarely within the statutory exemption. See H.A. Artists, 451 U.S. at 719-22 (holding similar claims by theatrical agents challenging restrictions on agents that were unilaterally imposed by union representing stage actors and actresses fell within statutory exemption).

        *ii.     Antitrust Challenges to the CBA*

Not all of Dickey's antitrust claims target NFLPA regulations. Some challenge enforcement of the CBA. Restraints of trade imposed through a collective bargaining agreement do not qualify for the statutory exemption, because a collective bargaining agreement represents

11

a combination between a labor union and a non-labor group – in this case, the NFLMC. See American Steel Erectors, 536 F.3d at 77. Yet precisely because so much union activity takes place through the collective bargaining process, courts developed a nonstatutory exemption to the antitrust laws. "The nonstatutory exemption shields some restraints on competition imposed through the bargaining process, where the alleged anticompetitive conduct is anchored in the collective-bargaining process, concerns only the parties to the collective bargaining relationship, and relates to wages, hours, conditions of employment, or other mandatory subjects of collective bargaining." Id. This exemption governs Dickey's CBA-based antitrust claims.

Three of these requirements easily apply here. NFLPA certification of players' agents is "in accordance with its role as exclusive bargaining agent for NFL players." 2011 CBA Art. 48, 214. Certification ensures that agents properly apply the CBA's provisions governing players' wages and other conditions of employment to NFLPA members' individual contracts with NFL clubs. While the CBA requires the NFL Commissioner to disapprove player contracts negotiated by agents who fail to satisfy the NFLPA's requirements, it makes clear that it is the NFLPA that retains "sole and exclusive authority to determine the number of agents to be certified, and the grounds for withdrawing or denying certification of an agent." Id. Enforcement of NFLPA certification requirements, including the Three Year Rule, is therefore a form of restraint imposed through the bargaining process; anchored in that process; and designed to implement the union's bargained-for wages, hours, and other conditions of employment.

As for whether "the alleged anticompetitive conduct . . . concerns only the parties to the collective bargaining relationship," Dickey argues that because the conduct he challenges affects competition among agents, and does not involve a dispute between the NFL and the players, the conduct is not exempt from antitrust scrutiny. This argument fails, because there is no relevant

12

anticompetitive activity absent an alleged restraint within the business market in which the NFL operates. As the Second Circuit stated in Clarett v. National Football League, 369 F.3d 124, 143 (2d Cir. 2004), where it held that the nonstatutory exemption governed an antitrust challenge to eligibility rules for the NFL's player draft, "[t]his is simply not a case in which the NFL is alleged to have conspired with its players union to drive its competitors out of the market for professional football." Instead, "the only alleged anticompetitive effect of the challenged restraint is on a labor market organized around a collective bargaining relationship." Id. at 134.

To the extent Dickey's allegations regarding anticompetitive conduct concern any market beyond the market for NFL players' agents, such allegations are too vague to support a plausible claim for relief. See Compl. ¶ 31(a) (Defendants' conduct gives unfair advantage to the "competitors in the business industry of the NFL"); id. ¶ 31(d) ("Defendants are violating the basic rules of anti-competitive conduct in the business activities of the NFL in a discriminatory manner . . . ."); id. ¶ 31(e) (Defendants are violating their duty to "honor the integrity of a free enterprise system and not allow for artificial barriers to exist to thwart competition in the industry and business of NFL activities."). These "wholly conclusory" allegations are insufficient to survive Defendants' motions to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007).

This leaves Dickey's numerous allegations regarding Defendants' anticompetitive conduct *within* the market for those seeking to represent NFLPA members. These include, for example, the allegations that Defendants' conduct is preventing "fair and equitable competition *of all Certified Agent[s] in the NFL's market economy*," Compl. ¶ 31(a) (emphasis added), "unreasonably limiting the fair and equitable competition *between Certified Agent[s]* in the industry," id. ¶ 31(b) (emphasis added), and creating "an artificial 'three-year rule' barrier to the

13

qualifications and continual certifications of *true agents*," id. ¶ 31(c) (emphasis added).

Application of the nonstatutory labor exemption to the anticompetitive conduct alleged here fits squarely within the goals of federal labor law. The CBA Preamble confirms that the NFLPA is "the sole and exclusive bargaining representative of present and future employee players in the NFL." Section 9(a) of the National Labor Relations Act ("NLRA") states:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.

29 U.S.C. §159(a). As the exclusive representative of NFL players, the NFLPA has the statutory authority to limit the ability of its members to negotiate with their employers – here, the clubs – through representatives other than the NFLPA or those the NFLPA approves.

The entire "market" in which Dickey seeks to compete, and within which Defendants' alleged anticompetitive conduct occurs, exists solely by virtue of the NFLPA's § 9(a) status. This market is not intended to be a competitive one, at least not outside the context of a representation or decertification election under the NLRA. Because the NFLPA is the majority-elected exclusive representative of all NFL players, labor law does not provide Dickey with *any* authority to represent those players except that which the NFLPA – in its sole discretion – delegates to him. See, e.g., Clarett, 369 F.3d at 139 n.16 (ability of unionized players to negotiate individually with teams is "not an exercise of a right to free competition under the antitrust laws; rather, it is an exercise of a right derived from collective bargaining itself" (quoting Caldwell v. Am. Basketball Ass'n, Inc., 66 F.3d 523, 528 (2d Cir. 1995))); White v. Nat'l Football League, 92 F. Supp. 2d 918, 924 (D. Minn. 2000) ("Player agents are permitted to negotiate player contracts in the NFL only because the NFLPA has delegated a portion of its exclusive

representational authority to them."). Labor law explicitly confers on the NFLPA the "representational monopoly" that Dickey challenges as anticompetitive.

Thus, while the Three Year Rule and other restrictions are imposed on NFLPA agents who are not parties to the CBA, those restrictions affect only those who seek to act within the space statutorily designated to the NFLPA as the exclusive representative of all NFL players. Application of the antitrust laws to prevent the NFLPA from regulating its own members' agents would conflict with the system of exclusive representation established in § 9(a), while producing no direct competitive benefit in the relevant business market for professional football. This is precisely the type of labor market activity that the nonstatutory labor exemption shields from antitrust liability. See American Steel Erectors, 536 F.3d at 79 ("The case for the applicability of the nonstatutory exemption is strongest where the alleged restraint operates primarily in the labor market and has only tangential effects on the business market."). Accordingly, Dickey's antitrust challenges to the enforcement of the CBA fall within the nonstatutory labor exemption.[6]

    b. *State-Law Claims*

Dickey's Complaint also asserts state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty against the NFLPA, NFLMC, and NFL. Dickey's state-law claims are based on the CBA, the NFLPA Contract Advisor Regulations, and an implied contract and duty of good faith and fair dealing that allegedly arose when Dickey paid an initial certification fee to the NFLPA.

---

[6] Count Three of the Complaint also purports to assert a claim for "wrongful collusion." Compl. ¶ 32. It is unclear what Dickey meant by this allegation, and whether he intended to assert a federal or state-law claim for wrongful collusion. The only legal citations in Count Three are to the Sherman Antitrust Act and the Clayton Antitrust Act, and the factual allegations in Count Three are the same as those used to support the federal antitrust claims. Therefore, the court construes Dickey's wrongful collusion claim as a reiteration of his federal antitrust claims.

Nearly all of Dickey's state-law claims are based on the CBA. See, e.g., Compl. ¶ 30(a) ("Defendants are acting in concert to violate its [sic] own CBA."); id. ¶ 30(f) (Defendants are "allowing various agents and sports agency firms to violate the rules and regulations of the CBA and NFLPA."); id. ¶ 30(k) ("Defendants have violated their agreement, expectations and fiduciary duty to the Plaintiff(s) to operate in good faith and honor the same rules and regulations as promulgated in the CBA."). Dickey's contractual claims based on violations of the CBA are preempted by § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. As the Supreme Court has held, "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Caterpiller, Inc. v. Williams, 482 U.S. 386, 394 (1987) (quotations omitted). Section 301 preempts Dickey's claims to the extent they "necessitate[] analysis of, or substantially depend[] on the meaning of, a collective bargaining agreement." Quesnel v. Prudential Ins. Co., 66 F.3d 8, 10 (1st Cir. 1995).[7] Each of his CBA-based claims falls into this category.

To the extent Dickey's claims are based on other agreements he may have had with Defendants, such as the NFLPA Regulations and his payment of a fee upon initial certification, these claims appear to be based on alleged individual contracts between Dickey and the NFLPA that are not preempted by § 301. See Williams, 482 U.S. at 394 ("Section 301 says nothing about

---

[7] Even if Dickey's claims based on the CBA were not preempted, he has failed to state a claim upon which relief may be granted as to the CBA. According to Dickey's own allegations, the CBA is an agreement "between the NFL and NFLPA." Compl. ¶ 6. Dickey writes in his opposition to Defendants' motions to dismiss that "the matter before this court simply stems from whatever authority that has been agreed upon between the NFL and NFLPA under the CBA." See Return to NFLPA Mots. to Compel & Dismiss Compl. 3 [#28]. Dickey has not alleged that he is a party to the CBA, and has not pleaded any facts showing that he is otherwise entitled to enforce the terms of that contract as an intended beneficiary. Thus, he has not shown that the CBA was a valid contract between him and any of the three Defendants.

16

the content or validity of individual employment contracts."). So long as any of these claims based on the Regulations and fee payment "can be resolved without interpreting the [collective bargaining] agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

Insofar as Dickey's non-CBA state-law claims target the NFLPA's representational structure, however, those claims are preempted by § 9(a) of the NLRA. State law "causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." Belknap, Inc. v. Hale, 463 U.S. 491, 498 (1983). Claims between two competing unions seeking to represent a bargaining unit involve conduct governed by the NLRA's system of exclusive representation, and are thus preempted by § 9(a). See, e.g., Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 802 (3d Cir. 1996). As discussed *supra*, the NFLPA is the exclusive representative of all NFL players. Certified agents' authority to represent NFL players in negotiating with NFL clubs exists solely by virtue of the NFLPA's discretionary decision to delegate some of its § 9(a) authority to those agents. Section 9(a) thus preempts Dickey's challenges to the methods by which the NFLPA delegates this authority, which are governed by the NLRA's system of exclusive representation.

To the extent Dickey's claims are akin to those brought by an *agent* (as in an agent of the NFLPA, rather than a player's "certified agent") against the NFLPA in the role *principal* (as opposed to in its role as a labor union), those claims fail on the merits. To succeed on a breach of contract claim, Dickey must "show that (1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013). Drawing all reasonable inferences in Dickey's favor, the Complaint alleges the existence

17

of the following contract between the NFLPA and Dickey: Dickey paid to become certified as a Contract Advisor, and in exchange, the NFLPA agreed to abide by its Contract Advisor Regulations.[8] Dickey, however, has not alleged a *breach* of any obligation in those Regulations. Had Dickey challenged a denial or revocation of certification, which he has not done, that might constitute a breach, but such a challenge would be subject to the arbitration agreement. Instead, Dickey's alleged breach is the expiration of his certification. Application of the Three Year Rule represented the fulfillment, rather than a breach, of the NFLPA Contract Advisor Regulations. Dickey has not alleged any facts showing that he was able to perform his side of this contractual bargain by negotiating a contract to an NFL club's active roster during his first three years of certification. Instead, Dickey complains that the NFLPA enforced its regulations against him while permitting other agents to satisfy the Three Year Rule by jointly negotiating individual player contracts with more established agents. Dickey does not allege that the NFLPA failed to do something it agreed to do. As such, Dickey's contractual claims fail on the merits.

Finally, all of Dickey's claims for breach of fiduciary duty must be dismissed because he has not alleged the existence of any fiduciary relationship between himself and any Defendant. To state a claim for breach of fiduciary duty, a plaintiff must first allege the "existence of a fiduciary duty arising from a relationship between the parties." De Prins v. Michaeles, 189 F. Supp. 3d 209, 214 (D. Mass. 2016). "A fiduciary duty exists when one reposes faith, confidence, and trust in another's judgment and advice." Doe v. Harbor Sch., Inc., 843 N.E.2d 1058, 1064

---

[8] To the extent Dickey asserts that his payment of a fee obligated Defendants to abide by any obligations beyond the NFLPA Contract Advisor Regulations, his Complaint fails to sufficiently allege such an agreement. Further, to the extent that this contract based on the payment of a fee obligated any of the Defendants to comply with the NFLPA Contract Advisor Regulations, it obligated *only* the NFLPA. Dickey fails to offer any plausible factual allegation supporting his assertion that he had an agreement with the NFL or NFLMC.

18

(Mass. 2006) (internal quotations omitted). Dickey's conclusory allegation that Defendants breached their fiduciary duty is insufficient to survive a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Beyond that assertion, Dickey fails to allege any facts showing that he had a relationship with any of the three Defendants giving rise to fiduciary duties.

### IV. Conclusion

For the foregoing reasons, the NFLPA's Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, to Dismiss the Complaint for Failure to State a Claim [#16] is ALLOWED in part, insofar as it requests dismissal of Dickey's Complaint for failure to state a claim, and DENIED in part, insofar as it requests an order compelling arbitration. The NFL and NFLMC's Motion to Dismiss the Complaint [#23] is ALLOWED in its entirety.

IT IS SO ORDERED.

Date: September 26, 2018 /s/ Indira Talwani
United States District Judge